UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SING FOR SERVICE, LLC,                     Case No. 1:20-cv-04018
                                           Honorable Ronald A. Guzman
        Plaintiff,

v.

18W HOLDINGS, INC.,

        Defendant.

| | |
|---|---|
| Ronald G. DeWaard (90785374)<br>Brion B. Doyle (MI Bar P67870)<br>VARNUM LLP<br>Attorneys for Plaintiff<br>Bridgewater Place, P.O. Box 352<br>Grand Rapids, MI 49501-0352<br>(616) 336-6000<br>rgdewaard@varnumlaw.com<br>bbdoyle@varnumlaw.com | P. Stephen Fardy (6230900)<br>Patrick Paul Clyder (6292573)<br>SWANSON, MARTIN & BELL<br>Attorneys for Defendant<br>330 North Wabash, Ste. 3300<br>Chicago, IL 60611<br>(312) 321-9100<br>sfardy@smtbrials.com<br>pclyder@smtbrials.com |
| Michael J. Grant (6275028)<br>TABET DIVITO & ROTHSTEIN LLC<br>Attorneys for Plaintiff<br>209 S. LaSalle St., 7th Floor<br>Chicago, IL 60604<br>(312) 762-9464<br>mgrant@tdrlawfirm.com | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

I. INTRODUCTION ...............................................................................................................1

II. FACTUAL BACKGROUND ..............................................................................................1

III. LAW AND ARGUMENT ...................................................................................................4

      A. MEPCO'S SECOND AMENDED COMPLAINT CONTAINS COERCIVE CLAIMS, WHICH RELATE BACK TO THE ORIGINAL FILING OF THE COMPLAINT, AND 18W'S MOTION TO DISMISS THE SUIT FOR LACK OF SUBJECT MATTER JURISDICTION CAN BE DENIED ON THIS BASIS ALONE ................................................4

      B. AN ACTUAL CONTROVERSY EXISTS SUFFICIENT TO ESTABLISH SUBJECT MATTER JURISDICTION OVER THE DECLARATORY JUDGMENT ACTION ....................6

      C. THE RELEVANT FACTORS FAVOR THIS COURT'S EXERCISE OF DISCRETION TO ENTERTAIN THE REQUEST FOR DECLARATORY RELIEF ...........................................9

      D. MEPCO HAS ADEQUATELY PLEAD ITS CLAIMS FOR BREACH OF CONTRACT, TORTIOUS INTERFERENCE, FRAUDULENT INDUCEMENT AND SUCCESSOR LIABILITY ..............................................................................................................12

          1. The heightened pleading standard of Rule 9(b) does not apply to Mepco's claims for breach of contract, tortious interference, and successor lability ....................................................................................12

          2. The allegations supporting Mepco's fraudulent inducement claim satisfy Rule 9(b) ........................................................................................13

IV. CONCLUSION ..................................................................................................................15

# **TABLE OF AUTHORITIES**

**Cases**

*Amerimax Real Estate Partners, Inc. v. RE/MAX Int'l, Inc.*,
    600 F. Supp. 2d 1003, 1008 (N.D. Ill. 2009) ................................................................... 11

*Barry Aviation, Inc. v. Land O'Lakes Municipal Airport Com'n*,
    377 F.3d 682, 687 (7th Cir.2004) ..................................................................................... 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007) ............................................................ 13

*Borsellino v. Goldman Sachs Grp., Inc.*,
    477 F.3d 502, 507–08 (7th Cir. 2007) .............................................................................. 13

*Duthie v. Matria Healthcare, Inc.*,
    254 F.R.D. 90, 94 (N.D. Ill. 2008) ................................................................................... 15

*ECC Computer Centers of Illinois, Inc. v. Entre Computer Centers, Inc.*,
    597 F. Supp. 1182, 1185 (N.D. Ill. 1984) ........................................................................ 10

*Elzeftawy v. Pernix Grp., Inc.*,
    No. 18-CV-06971, 2020 WL 4572345, at *31 (N.D. Ill. Aug. 8, 2020) .......................... 15

*Gros v. Midland Credit Mgmt.*,
    525 F. Supp. 2d 1019, 1028 (N.D. Ill. 2007) ................................................................... 13

*Mayle v. Felix*,
    545 U.S. 644, 659; 125 S. Ct. 2562, 2572; 162 L. Ed. 2d 582 (2005) ............................... 5

*Molex Inc. v. Wyler*,
    334 F. Supp. 2d 1083, 1088 (N.D. Ill. 2004) ................................................................... 11

*Nationwide Mut. Fire Ins. Co. v. Willenbrink*,
    924 F.2d 104, 105 (6th Cir.1991) ..................................................................................... 10

*Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*
    28 F.3d 572, 577 (7th Cir.1994) ........................................................................... 6, 10, 11

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
    631 F.3d 436, 441–42 (7th Cir. 2011) ........................................................................ 14, 15

*Publications Int'l, Ltd. v. McRae*,
    953 F. Supp. 223 (N.D. Ill. 1996) ................................................................................. 8, 9

*Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLC*,
    240 F. Supp. 3d 848, 851 (N.D. Ill. 2016) ......................................................................... 4

*Sears, Roebuck & Co. v. Zurich Ins. Co.*,
    422 F.2d 587, 588 (7th Cir. 1970) ................................................................................. 10

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*,
    819 F.2d 746, 749 (7th Cir. 1987) ................................................................................... 6

*U.S. ex rel. Garst v. Lockheed-Martin Corp.*,
    328 F.3d 374, 377–74 (7th Cir. 2003) ........................................................................... 14

*U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.*,
    794 F.3d 457, 466 n.5 (5th Cir. 2015) ........................................................................... 14

*United Parcel Serv., Inc. v. Pennie*,
    No. 03 C 8019, 2004 WL 2064547, at *2 (N.D. Ill. Sept. 8, 2004) .................................. 6

**Statutes**

28 U.S.C. § 1332(a) ................................................................................................................. 6

**Other Authorities**

Existence of Actual Controversy, 10B Fed. Prac. & Proc. Civ. § 2757 (4th ed.) ........................... 8

**Rules**

FRCP 15(a)(2) ....................................................................................................................... 15

FRCP 8(a)(2) ......................................................................................................................... 13

FRCP 9(b) ............................................................................................................................. 12

Rule 15(c)(1)(B) ...................................................................................................................... 5

**I.     INTRODUCTION**

Defendant 18W Holdings, Inc.'s ("18W") request to dismiss or transfer this suit is a transparent attempt to avoid the consequences of a forum selection provision that 18W freely agreed to, and it must be rejected. First, this court has subject matter jurisdiction over Plaintiff Sing for Service, LLC's ("Mepco") declaratory judgment claim because an actual controversy exists, and 18W's argument to the contrary simply represents a fundamental misunderstanding of the parties' business relationship.

In addition, 18W's throwaway, single-page request for dismissal of Mepco's coercive claims for relief deserves no serious consideration from this Court. Without any detailed discussion of the allegations of the Complaint or the necessary element of each claim, 18W incorrectly applies the heightened pleading standard of Rule 9(b) to Mepco's claims for breach of contract, tortious interference, and successor liability merely because the Complaint described 18W's conduct as a "wrongful scheme." And as explained below, Mepco has alleged sufficient facts to satisfy the relevant pleading standards for its fraudulent inducement claim under Seventh Circuit precedent.

**II.    FACTUAL BACKGROUND**

Mepco is in the business of processing payment plan agreements, including for vehicle service contracts. *See* Affidavit of Jim Jeske at ¶ 1, **Exhibit A**. 18W is in the business of marketing and selling vehicle service contracts. *Id*. In the ordinary course of the parties' business relationship, and pursuant to the terms of their contract, Mepco provides funding to 18W upon the receipt of qualified payment plan agreements from 18W, which allows 18W to offer the purchasers of Service Contracts the option to pay for those Service Contracts over time. *Id*. at ¶ 2. A copy of the parties' Agreement is attached hereto as **Exhibit B**. Mepco is repaid for its funding through the receipt of the monthly payments under the payment plan agreements that it receives from 18W,

1

plus a defined "Discount Amount" that Mepco earns on each payment plan for which it provides funding. *See* Ex. A at ¶ 3. Through this contractual arrangement, Mepco essentially purchases the payment plan agreements at a discount and then processes and services those payment plans.

As the creditor in this business relationship, the parties' contract provides various rights and protections to Mepco, including the right to deem itself insecure and withhold the weekly funding that would otherwise be payable to 18W for new payment plan agreements. *Id*. at ¶ 5. As described in its Complaint, as amended, Mepco deemed itself insecure in March 2020 and withheld successive weekly funding payments to 18W. *Id*. at ¶ 6. For its part, 18W disputes that Mepco properly deemed itself insecure and claims that Mepco materially breached the parties' agreement in doing so. This is very much an active, live controversy, as Mepco continues to hold a portion of 18W's funding. And while 18W claims to have terminated the parties' agreement, there is still an ongoing business relationship, and Mepco's rights and remedies under the parties' agreement expressly survive any such termination. See Ex. B at ¶ 13(g).

Specifically, the term of the book of payment plan agreements that Mepco received from 18W will continue generating payments during a "run-off" period that will end in early 2022. Ex. A at ¶ 7. And a percentage of those payment plan agreements will be canceled during that period, as the purchasers have the right to cancel those agreements at any time. *Id*. When a payment plan agreement cancels, Mepco is owed a refund amount (defined as the "Refund Amount" under the parties' agreement) for the funding that it previously advanced to 18W. *Id*. at ¶ 8.

On a regular basis, typically weekly, Mepco calculates the Refund Amount that it is owed from 18W for canceled payment plans. *Id*. at ¶ 9. In the event that Mepco is holding funding from 18W, as is presently the case, Mepco will offset 18W's Refund Amount liability against that funding. *Id*. In the absence of funding or other collateral or security, 18W would instead accrue

a liability to Mepco. *Id*. Thus, Mepco seeks guidance from this Court as to whether it is properly exercising its rights to continue to withhold 18W's funding and use that funding to offset 18W's Refund Amount liability, which continues to accrue on a regular basis, or whether Mepco should release the funding that it continues to hold to 18W.

While the controversy described above was the genesis of this lawsuit and Mepco's declaratory judgment action, Mepco has since become aware of wrongful conduct by 18W that has caused Mepco to suffer significant damages. 18W is the successor to another service contract marketing company, AA Auto Holdings, Inc. ("Auto Holdings"). Mepco and Auto Holdings were parties to a virtually identical Dealer Agreement. Due to an ongoing dispute and litigation among the principals of Auto Holdings, the majority owners of Auto Holdings approached Mepco and indicated that they intended to form 18W as a new, successor company to Auto Holdings. Mepco was agreeable with entering into a new Dealer Agreement with 18W, provided that Auto Holdings would continue to honor its existing Dealer Agreement and pay Mepco the Refund Amounts that would continue to become due and owing under that agreement. The principals of Auto Holdings and 18W (the same individuals) assured Mepco that this would occur. See Compl. ¶ 32.

However, shortly after Mepco and 18W entered into their Dealer Agreement, Auto Holdings defaulted on its obligations to Mepco under that separate Dealer Agreement. Mepco has since discovered that 18W caused a significant number of Auto Holdings' payment plan purchasers to cancel their service contracts and related payment plan agreements with Auto Holdings and, at the same time, enter into new service contracts and payment plan agreements with 18W. The effects of this wrongful conduct caused significant damage to Mepco. With the mass cancellation of Auto Holdings' payment plan agreements, Mepco lost the security for the funding that it previously advanced. And because the same principals who started 18W are winding down Auto

Holdings, Auto Holdings is now unable to pay its significant Refund Amount liability to Mepco. Moreover, because of 18W's wrongful scheme, Mepco was essentially unknowingly funding the same payment plan agreement twice. 18W's wrongful conduct gives rise to liability under theories of tortious interference with contract, breach of contract, successor liability, and fraudulent inducement, and 18W is liable to Mepco in an amount that exceeds $1 million.

### III. LAW AND ARGUMENT

#### A. MEPCO'S SECOND AMENDED COMPLAINT CONTAINS COERCIVE CLAIMS, WHICH RELATE BACK TO THE ORIGINAL FILING OF THE COMPLAINT, AND 18W'S MOTION TO DISMISS THE SUIT FOR LACK OF SUBJECT MATTER JURISDICTION CAN BE DENIED ON THIS BASIS ALONE.

Mepco originally filed this action seeking only declaratory relief. With leave of the Court, Mepco filed its Second Amended Complaint alleging additional coercive claims based on wrongdoing arising from the same core of facts as the original and First Amended Complaint. As this Court has recognized, the addition of claims for coercive relief to a complaint that originally sought only declarative relief transforms the complaint into a coercive action, rather than a declaratory action, for purposes of any analysis of appropriate venue. *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLC*, 240 F. Supp. 3d 848, 851 (N.D. Ill. 2016).

In *Republic Techs.*, the plaintiff originally filed an action for declaratory judgment, then later amended to add coercive claims. The defendant argued that its later-filed Arizona action, also for coercive relief, should be given precedence because the plaintiff's complaint originally sought only declaratory relief. This Court rejected that argument, finding that even though the complaint was originally filed as a declaratory action, the addition of coercive claims required the court to treat the entire action as a coercive action for purposes of analyzing the appropriate venue for the dispute. *Republic Techs.*, 240 F. Supp. 3d at 851 ("Since Republic's suit initially sought only declaratory relief and HBI's suit seeks coercive relief, HBI claims that the Arizona action

4

should be given priority. … in light of the additional claims asserted in Republic's amended complaint, both parties' actions are 'coercive.' While Republic's original complaint sought only declaratory relief, HBI cites no authority suggesting that this ought to make a difference in the transfer analysis."). The same is true here: with the additional coercive causes of action in the Second Amended Complaint, Mepco's action is one for coercive relief, and must be analyzed as such in considering the proper forum for this dispute.

Further, because Mepco's additional claims arise out of the same core of facts as its current complaint, the new causes of action relate back to the time of original complaint as a matter of law. Rule 15(c)(1)(B) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when … the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." As the Supreme Court has explained, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659; 125 S. Ct. 2562, 2572; 162 L. Ed. 2d 582 (2005). So long as there is a common core of operative facts, an amendment will relate back "even though the amendment invoked a legal theory not suggested by the original complaint and relied on facts not originally asserted." *Id*.

Here, the claims for breach of contract, tortious interference, successor liability, and fraudulent inducement plainly arise out of a core of operative facts in common with the request for declaratory relief. In pertinent part, all claims arise from the breakdown of the VSC financing relationship among Mepco and 18W and its predecessor. With the added claims for coercive relief, each arising out of the same transaction or occurrence of the First Amended Complaint, the Court must treat this action as one for coercive relief from the time of its original filing for purposes of analyzing the appropriate venue for this dispute. Even assuming arguendo that the Court had no

subject matter jurisdiction over the claim for declaratory relief for lack of an actual controversy, it certainly has subject matter jurisdiction over these claims for coercive relief, as there is diversity between the parties and the amount in dispute exceeds $75,000. 28 U.S.C. § 1332(a).

### B. AN ACTUAL CONTROVERSY EXISTS SUFFICIENT TO ESTABLISH SUBJECT MATTER JURISDICTION OVER THE DECLARATORY JUDGMENT ACTION.

Not only does this Court have subject matter jurisdiction over Mepco's Complaint, as amended, it also has subject matter jurisdiction over Mepco's claim for declaratory relief in particular. As this Court has recognized, "The purpose of the [Declaratory Judgment Act] is 'to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication, without waiting until his adversary should see fit to begin suit, after damage had accrued.'" *United Parcel Serv., Inc. v. Pennie*, No. 03 C 8019, 2004 WL 2064547, at *2 (N.D. Ill. Sept. 8, 2004) (quoting *Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 577 (7th Cir.1994)). And as Defendant itself admits in its brief, an actual controversy commonly occurs when a party continually accuses another of wrongdoing to increase its damages claims, thus requiring an adjudication of its rights to prevent this from occurring. *See* Def's Br. at PageID 226 (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987)).

Here, Defendant ignores the undisputed fact that Mepco's potential liability to 18W continues to accrue on a weekly basis, as it weighs whether or not to release the funding that 18W claims is still due or, instead, use that funding to offset 18W's new liability to Mepco. While Mepco has already made the initial determination to withhold funding for reason of insecurity, as is its right under the parties' Agreement, the decision of whether to continue withholding funding is renewed on a weekly basis. Moreover, the factual allegations 18W makes in support of its own motion make clear not only that the parties were squarely embroiled in an actual controversy when

Mepco filed its complaint, but also that 18W had been continually accusing Mepco of wrongdoing and claiming damages that will only continue to accrue as time goes on. 18W's allegations make clear that the parties were at odds regarding their respective rights and responsibilities as of early July, when Mepco filed its complaint:

> 18W and Mepco exchanged multiple written and phone communications from March 27, 2020 through July 9, 2020 in an effort to reach an amicable resolution. (Id. at ¶¶ 15-20.) In a letter dated June 25, 2020, Ms. Castro demanded that Mepco to comply with its contractual obligations and advised Mepco's counsel that 18W would commence legal action should Mepco fail to issue the funding by July 3, 2020.

Def's Br. at PageID 222.

18W also admits that it is claiming damages as a result of the withheld funding: "Mepco caused substantial financial damage to 18W by withholding funding which 18W is presently seeking recover in New Jersey." *Id.* at PageID 229. The continued withholding of this funding will only increase 18W's potential claim for relief against Mepco, as 18W may claim consequential or incidental damages from obtaining substitute financing or foregoing business opportunities. See 18W's New Jersey Complaint, **Exhibit C**, ECF No. 3 at PageID 37 (seeking "compensatory and consequential damages" and "disgorgement of profits," each in an undetermined amount). Consequential damages resulting from a failure to provide funding will only grow over time, as will whatever profits 18W seeks to disgorge. In light of these allegations presented in 18W's own motion and New Jersey complaint, there can be no serious dispute that there is an actual controversy between Mepco and 18W, wherein 18W continues to accuse Mepco of wrongdoing and claim damages that will continue to accrue as time goes on.

In addition, Defendant's broad contention that a plaintiff cannot bring a declaratory judgment action *after* it has potentially breached a contract is simply untrue. In fact, as Wright

7

and Miller explain in *Federal Practice and Procedure*, cases where "all of the acts that are alleged to create liability have already occurred" are the *easiest* case for establishing an actual controversy:

> There is little difficulty in finding an actual controversy if all of the acts that are alleged to create liability already have occurred. The court is then merely being asked, as in any litigation, to determine the legal consequences of past events and it is immaterial that it may be the one allegedly liable, rather than the person to whom the actor would be liable, who asks for the judicial determination. The problem in determining whether an actual controversy is present is when a declaration is sought on the legal consequences of some act that may or may not occur.

§ 2757 Existence of Actual Controversy, 10B Fed. Prac. & Proc. Civ. § 2757 (4th ed.). In other words, cases where the alleged breach has already occurred but damages continue to accrue are among the most appropriate situations to grant declaratory relief under the Declaratory Judgment Act.

In the present case, while an alleged breach by Mepco has already occurred, Mepco must on a weekly basis assess whether it will continue to withhold funding and apply it against amounts due from 18W for VSC cancellations, or give in to 18W's demands to release funding and seek reimbursement through other means. In this important respect, the present case is thus completely different from the authority cited by Defendant, where the facts <u>and extent</u> of liability was already fixed at the time the action for declaratory judgment was asserted. For example, Defendant contends this Court's decision in *Publications Int'l, Ltd. v. McRae,* 953 F. Supp. 223 (N.D. Ill. 1996) should guide the Court here. *See* Def's Br. at PageID 225. In that case, a book publisher failed to ship all the books it was required to provide under contract and, after its wholesaler customer threatened a breach of contract action in Kansas, brought a suit for declaratory judgment in this Court seeking an adjudication of the dispute. This Court recognized that there were no ongoing damages accruing in *McRae*: "Whatever damages there may be have already accrued."

*Id*. at 224.¹ That is a stark contrast with the present case where, for the next 18 months or so, Mepco will continue to make weekly decisions whether or not to extend the withheld funding, and 18W's potential damages will continue to accrue.

### C. THE RELEVANT FACTORS FAVOR THIS COURT'S EXERCISE OF DISCRETION TO ENTERTAIN THE REQUEST FOR DECLARATORY RELIEF.

The Court should also reject Defendant's invitation to exercise its discretion to decline entertaining Mepco's request for declaratory relief. For all of its accusations of forum shopping, Defendant is the party transparently seeking to avoid the forum selection clause it freely entered into with Mepco, which unambiguously provides that Mepco's lawsuit was filed in the proper, agreed-upon forum:

> This Agreement shall be construed in conformity with the laws of the Sate of Illinois without regard to choice of law or conflict of law rules should [Mepco] bring legal proceedings against [18W] . . . . <u>In the event [Mepco] initiates legal proceedings against [18W], the parties hereto irrevocably agree that such actions or proceedings in any way, manner or respect, arising out of or from or related to this Agreement, such proceedings shall be brought only in courts having situs within Cook County, Illinois</u>.

*See* Ex. A at ¶ 13(a).

As this Court has recognized, "courts must give effect to freely negotiated forum selection clauses … given the realities of commercial dealings and the reasonable expectations of the parties," unless "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *ECC Computer Centers of Illinois, Inc. v. Entre Computer Centers, Inc.*, 597 F. Supp. 1182, 1185 (N.D. Ill. 1984). Here, no strong

---

¹ Notably, the *McRae* Court never found that it lacked subject matter jurisdiction over the declaratory judgment action or that there was a lack of an actual controversy; instead, it declined to exercise its discretion to hear the suit, allowing the defendant's action in Kansas to proceed. *Id*. at 225.

public policy of Illinois would permit the Court to ignore the freely negotiated forum selection clause in the parties' contract. The Court should reject 18W's effort to avoid the terms of the forum selection provision to which it freely agreed.

And while the decision to grant declaratory relief is a matter of discretion, a "district court's discretion is not, however, unbridled; arbitrariness or the personal whim of the district court may not enter into its decision whether to grant or deny declaratory relief." *Sears, Roebuck & Co. v. Zurich Ins. Co.*, 422 F.2d 587, 588 (7th Cir. 1970). In exercising its discretion, the Court must consider "whether a declaratory judgment will settle the particular controversy and clarify the legal relations in issue." *NUCOR*, 28 F.3d at 579. In *NUCOR*, the Seventh Circuit identified five factors to guide the exercise of discretion to entertain declaratory judgment actions:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction, and
> (5) whether there is an alternative remedy that is better or more effective.

*Id.* (citing *Nationwide Mut. Fire Ins. Co. v. Willenbrink*, 924 F.2d 104, 105 (6th Cir.1991)). "If the declaratory judgment will clarify and settle the disputed legal relationships and afford relief from the uncertainty and controversy that created the issues, it is usually resolved rather than dismissed." *NUCOR*, 28 F.3d at 578.[2]

---

[2] In *NUCOR*, the Seventh Circuit affirmed the district court's exercise of discretion to hear the declaratory judgment action and award summary judgment to the plaintiff, finding that "[t]he allowance of the action relieved NUCOR's uncertainty and insecurity concerning its legal relationship with Aceros," and "[t]he judgment would serve the useful purpose of settling the contractual relationships." *Id.* at 579. The defendant Aceros, like 18W here, protested that the declaratory action was merely a race to the courthouse to secure a favorable forum. But the Seventh Circuit observed that Aceros waited eight months before filing its own action in Texas state court, demonstrating that "[t]here simply was no race to the courthouse." *Id.*

10

Here, each of the *NUCOR* factors favors this Court's exercise of jurisdiction over Mepco's request for declaratory relief. Regarding the first and second factors, a judgment that Mepco's determination of insecurity and decision to withhold funding was rightful under the parties' contract would settle this particular controversy and serve a useful purpose in clarifying the parties' obligations as Mepco continues to account for VSC cancellations on a weekly basis and debate whether to release funding over the next year-and-a-half. 18W essentially argues that because the parties have each asserted additional coercive claims for relief, resolution of the declaratory action would not "settle the controversy" between the parties or serve a useful purpose because there would be other claims that remain to be decided. But this misunderstands the meaning of these two factors in the analysis. "Settling the controversy" merely means settling the *particular* issue that is the subject of the declaratory judgment action, not the totality of the dispute between the parties. *See Molex Inc. v. Wyler*, 334 F. Supp. 2d 1083, 1088 (N.D. Ill. 2004).

Regarding the third factor, while 18W cries procedural gamesmanship, it waited several months to file its claims against Mepco, belying its claim of some sort of "race to the courthouse." As of early July, the parties had a fundamental dispute regarding their rights and liabilities, and Mepco understood its potential liability to 18W would only continue to accrue so it filed a claim for declaratory relief. Meopco should not be forced to "wait[ ] until [its] adversary should see fit to begin suit." *Amerimax Real Estate Partners, Inc. v. RE/MAX Int'l, Inc.*, 600 F. Supp. 2d 1003, 1008 (N.D. Ill. 2009).

Regarding the fourth factor, there is no pending state court action. Likewise, with respect to the fifth factor, while 18W has filed its own subsequent action in federal court in New Jersey, there is no basis for concluding that that forum is any better or more effective for resolving Mepco's declaratory judgment claim. Further, Mepco now asserts coercive claims for breach of contract,

11

fraudulent inducement, tortious interference and successor liability. Those claims are within this Court's diversity jurisdiction under 28 U.S.C. §1332, and there is no basis for rejecting jurisdiction in favor of another forum, particularly given the parties' agreement as to forum selection.

> **D.** **MEPCO HAS ADEQUATELY PLEAD ITS CLAIMS FOR BREACH OF CONTRACT, TORTIOUS INTERFERENCE, FRAUDULENT INDUCEMENT AND SUCCESSOR LIABILITY.**
>
> **1.** **The heightened pleading standard of Rule 9(b) does not apply to Mepco's claims for breach of contract, tortious interference, and successor lability.**

18W argues that the heightened pleading standard of Rule 9(b) should apply to all of Mepco's coercive claims, including the claims for breach of contract, tortious interference, and successor liability, suggesting that because each of these claims relates to what the Complaint describes as 18W's "wrongful scheme," the supporting allegations must be pleaded with the particularity required by Rule 9(b). Rule 9(b) provides that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FRCP 9(b).

Though the totality of 18W's course of conduct certainly warrants the descriptor "wrongful scheme," the allegations supporting the claims of breach of contract, tortious interference, and successor liability are not based on any fraudulent conduct, and therefore are not required to be pleaded with the particularity required by Rule 9(b). This Court has recognized that whether Rule 9(b) applies depends on the substance of the factual allegations of the complaint and whether the claim is "premised on fraudulent conduct." *Gros v. Midland Credit Mgmt.*, 525 F. Supp. 2d 1019, 1028 (N.D. Ill. 2007) (citing *Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502, 507–08 (7th Cir. 2007)).

Mepco's breach of contract claim is not premised on any allegation of fraud; instead, it is based on a straightforward breach of contract provisions identified in the complaint. See Compl. ¶¶ 50 – 52. The tortious interference claim also does not rely on any alleged fraudulent statements;

12

rather, it claims that 18W caused Auto Holdings customers to cancel their contracts with Auto Holdings to Mepco's detriment. Compl. ¶¶ 48, 49, 52, 63-68. Compare *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507–08 (7th Cir. 2007) (tortious interference claim was based on allegation that defendant defrauded plaintiff into abandoning certain interests, therefore supporting allegations had to comply with pleading standard of Rule 9(b)). Similarly, Mepco's successor liability claim is not based on any allegation of fraudulent statements; instead, it is based on the fact that 18W is a mere continuation of its predecessor Auto Holdings. See Compl. ¶¶ 33-47, 69-74. This claim also does not implicate the pleading standard of Rule 9(b).

Mepco was required to plead only a short plain statement of the facts that would render each of these claims plausible, which it did. See FRCP 8(a)(2) ("A pleading that states a claim for relief must contain… a short and plain statement of the claim showing that the pleader is entitled to relief"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007) (The plaintiffs need only "nudge[ ] their claims across the line from conceivable to plausible.").

### 2. The allegations supporting Mepco's fraudulent inducement claim satisfy Rule 9(b).

The only allegations of the complaint that plausibly implicate the heightened standard of Rule 9(b) are those in support of Mepco's fraudulent inducement claim, which asserts that 18W's principals misled Mepco into entering into the Dealer Agreement by assuring Mepco that 18W's predecessor would continue to honor its obligations under its own Dealer Agreement with Mepco. 18W claims the allegations in support of that claim do not allege the circumstances of the fraud with particularity as required by Rule 9(b). But the circumstances are succinctly stated in the Second Amended Complaint. Paragraph 32 provides, in pertinent part:

> Mepco was agreeable with entering into a new Dealer Agreement with 18W, provided that Auto Holdings would continue to honor its existing Dealer Agreement and pay Mepco the Refund Amounts that would continue to become due and owing under that agreement. The principals of Auto Holdings and 18W

13

> (the same individuals) assured Mepco that this would occur: that Auto Holdings, which would continue to have common ownership with 18W, would continue to pay its Refund Amount liability to Mepco. On the basis of these representations, Mepco agreed to enter into a new agreement with 18W and to keep Auto Holdings' liability separate from 18W's liability.

Here, Mepco has pleaded short plain statements of the "what" (that Auto Holdings would pay its debts), "who" (principals of 18W), "when" (immediately prior to the execution of the dealer agreement), and "how" (in the course of negotiations related to the dealer agreement) of the fraudulent representations at issue.

While allegations of fraudulent conduct must be pleaded with the particularity required of Rule 9(b), the general requirements of Rule 8 are not nullified. *See e.g. U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 466 n.5 (5th Cir. 2015) ("'Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading,' which requires 'enough facts [taken as true] to state a claim to relief that is plausible on its face.'") As the Seventh circuit has stated, "[i]t is possible to write a short statement narrating the claim … even if Rule 9(b) requires supplemental particulars." *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 377–74 (7th Cir. 2003).

The Seventh Circuit has likewise recognized that "courts and litigants often erroneously take an overly rigid view" of the standard for Rule 9(b), when in fact "the requisite information" to satisfy the standard "may vary on the facts of a given case." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011). The *Pirelli* Court explained that the purpose of the heightened pleading standard is to avoid "stigmatic injury" to a defendant from unfounded fraud claims asserted in court, while at the same time not relegating litigants to overly formulistic pleading standards. *Id*. at 442.

Citing *Pirelli*, this Court recently rejected a defendant's contentions that the plaintiff's allegations of fraud were not sufficiently particular, finding that the allegations were responsibly

14

made and sufficiently supported in light of the allegations made elsewhere in the complaint, and therefore not defamatory or extortionate in derogation of Rule 9(b). *See Elzeftawy v. Pernix Grp., Inc.*, No. 18-CV-06971, 2020 WL 4572345, at *31 (N.D. Ill. Aug. 8, 2020). Here, Mepco's allegations of fraudulent inducement, in the context of the entire Complaint, are sufficient to put 18W on notice of fraudulent conduct complained of and are also sufficiently supported to avoid any "stigmatic injury" to 18W. The particularity requirement of Rule 9(b) is satisfied.

To the extent this Court finds Mepco has not satisfied the requirements of Rule 9(b) with respect to its fraudulent inducement claim, Mepco should be granted leave to amend its fraudulent inducement claim, which was asserted for the first time in the Second Amended Complaint, because Mepco can readily provide detailed information to further support its allegations to overcome any technical pleading deficiency and allow this matter to be decided on its merits. See FRCP 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *Duthie v. Matria Healthcare, Inc.*, 254 F.R.D. 90, 94 (N.D. Ill. 2008) ("By its plain terms, [Rule 15(a)(2)] reflects a liberal attitude towards the amendment of pleadings—a liberality consistent with and demanded by the preference for deciding cases on the merits.") (citing *Barry Aviation, Inc. v. Land O'Lakes Municipal Airport Com'n*, 377 F.3d 682, 687 (7th Cir.2004)).

### IV. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that Defendant's motion be denied.

VARNUM LLP<br>
Attorneys for Plaintiff:

DATED: January 4, 2021        By:    _/s/ Brion B. Doyle_____
Ronald G. DeWaard (90785374)
Brion B. Doyle (P67870)
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
rgdewaard@varnumlaw.com
bbdoyle@varnumlaw.com

15