**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SING FOR SERVICE, LLC, a Delaware limited liability company doing business as Mepco, ) ) ) ) | |
| Plaintiff, ) ) | No. 20 C 4018 |
| v. ) ) | Judge Ronald A. Guzmán |
| 18W HOLDINGS, INC., ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Defendant's motion to dismiss and transfer is granted in large part for the reasons explained below.

## BACKGROUND

Plaintiff, Sing for Service, LLC, which does business as Mepco ("Mepco"), filed this action against defendant 18W Holdings, Inc. ("18W"). In October 2019, Mepco and 18W executed a Dealer Agreement (the "Agreement"), pursuant to which Mepco provided 18W with funding and processing services with respect to monthly payment plans for consumer vehicle service contracts ("VSCs"). Essentially, Mepco bought the plans from 18W at a discount, and then over time recouped its payments (to which the parties refer as "funding") by collecting monthly payments from consumers. Under the Agreement, Mepco had the opportunity to accept or reject any VSC, and was obligated to "fund" (pay for) the VSCs it accepted for servicing. The Agreement provided that in the event that a VSC was canceled, 18W had to refund to Mepco the amount of "funding" that remained unpaid, in addition to late fees and other charges. The Agreement also stated that Mepco would provide regular, periodic funding for VSCs (which was typically on a weekly basis), and that in the event that Mepco "in its sole discretion[] reasonably deem[ed] itself insecure," Mepco would have the right to retain any funds due to 18W until Mepco "reasonably deem[ed] itself secure." (ECF No. 1-1, Agreement at 3.)

Mepco alleges that in March 2020, it deemed itself insecure with respect to potential cancellation liability from 18W and "withheld funding that it would have otherwise advanced" to 18W. (ECF No. 6, Am. Compl. ¶ 14.) One reason for its decision, Mepco says, was that 18W's predecessor company defaulted on its obligations to Mepco. (*Id.* ¶ 15.) 18W contested Mepco's right to withhold the funding and asserted that Mepco did not act reasonably in deeming itself insecure. (*Id.* ¶ 17.) On March 27, 2020, 18W informed Mepco that it was terminating the

parties' Agreement.[1]  (*Id.* ¶ 18.)  According to 18W, the parties exchanged multiple communications from March to July 2020 in an effort to reach an amicable resolution.  (ECF No. 14-1, Decl. of Edvie M. Castro ¶ 16.)

On July 9, 2020, Mepco filed this action, asserting a single declaratory-judgment claim against 18W.  Mepco filed an amended complaint the next day to cure its deficient citizenship allegations; the amended complaint is otherwise the same as the original complaint.  The only relief Mepco originally sought was declaratory relief "that Mepco properly deemed itself insecure and withheld funding from [18W], and that Mepco is not obligated under the parties' Agreement to provide any additional funding to [18W]."  (Am. Compl. at 5.)

On October 26, 2020, 18W moved to dismiss the amended complaint for lack of jurisdiction, arguing that there was no actual controversy, and thus no subject-matter jurisdiction, because the parties' Agreement had been terminated and Mepco had already engaged in the conduct as to which it sought a declaration—the withholding of funding.  The same day, 18W filed an action against Mepco in the United States District Court for the District of New Jersey.  18W asserted a claim for breach of contract based on Mepco's withholding of funding, in addition to claims for fraud, unjust enrichment, tortious interference with contract and with prospective economic advantage, breach of the implied covenant of good faith and fair dealing, and fraudulent inducement.  (ECF No. 29-1.)

On November 16, 2020, Mepco filed a motion for leave to file a Second Amended Complaint in this action.  In the motion, Mepco stated that it had "discovered and confirmed information giving rise to additional claims against 18W for breach of contract; tortious interference with contract, business relationship, and/or economic advantage; successor liability; and fraudulent inducement, each of which arises out of the same transactions and occurrences alleged in the First Amended Complaint."  (ECF No. 23, Mot. Leave ¶ 6.)  Mepco described the facts underlying the additional claims (Counts II through V) and attached its proposed Second Amended Complaint.  On November 17, 2020, the Court granted Mepco's motion and set a briefing schedule on an anticipated motion to dismiss the Second Amended Complaint.  Mepco filed its Second Amended Complaint on December 4, 2020.

On December 7, 2020, 18W filed the instant motion with respect to the Second Amended Complaint.  It moves (1) to dismiss Count I under Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. § 2201; (2) to transfer Counts II through V to the District of New Jersey under 28 U.S.C. § 1404(a), or, in the alternative, to dismiss those claims under Rules 12(b)(6) and 9(b); and (3) for an award of costs and attorneys' fees pursuant to the Agreement.

## DISCUSSION

For purposes of a motion to dismiss under Rule 12(b)(1), the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in plaintiff's favor.  *See Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017).  A Rule 12(b)(1)

---

[1] The Agreement contains a provision stating that either party may terminate it for any reason upon thirty days' written notice to the other party.  (Agreement at 3.)

motion challenges federal jurisdiction, and the plaintiff bears the burden of establishing that the elements necessary for jurisdiction are met. *Silha v. ACT, Inc.*, 807 F.3d 169, 173-74 (7th Cir. 2015).

A.     **Dismissal and Transfer**

18W contends that Count I, Mepco's claim for declaratory judgment, should be dismissed because no actual controversy exists with respect to either of Mepco's requests for declaratory relief (that it properly deemed itself insecure and that it is not obligated under the Agreement to provide 18W with additional funding). But even if a controversy exists, says 18W, the Court should exercise its discretion not to hear Mepco's case, because Mepco filed this action to "take away" 18W's choice of forum as the natural plaintiff on the breach-of-contract issue. (ECF No. 29, Def.'s Mem. Supp. Mot. at 12.)

The parties' Agreement contains a forum-selection and choice-of-law provision that states as follows:

> Governing Law. This Agreement shall be construed in conformity with the laws of the State of Illinois without regard to choice of law or conflict of law rules should Mepco bring legal proceedings against 18W, but New Jersey law in the event 18W brings legal proceedings against Mepco. In the event Mepco initiates legal proceedings against 18W, the parties hereto irrevocably agree that such actions or proceedings in any way, manner or respect, arising out of or from or related to this Agreement, such proceedings shall be brought only in courts having situs within Cook County, Illinois. In the event 18W initiates legal proceedings in any way, manner or respect, arising out of or from or related to this Agreement, the proceedings shall be brought only in courts having situs within Passaic County, New Jersey. Each party hereby consents and submits to the jurisdiction of any local, state or federal court located within the counties and states set forth above and waives any right it may have to transfer the venue of any such action or proceeding.

(Agreement at 6 (edited to substitute Mepco for "SING" and 18W for "SELLER").)[2] It is perplexing that two business entities dealing at arms' length would agree to such obviously problematic terms. By including this provision in their contract, the parties set the stage for a race to the courthouse and the current dispute.

Under the Declaratory Judgment Act (the "Act"), federal courts may render judgment over "actual controvers[ies]." 28 U.S.C. § 2201; *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995). Generally, an actual controversy exists where the facts alleged, under all the circumstances, show that there is a controversy, between parties having

---

[2]     This paragraph appears to be the only place in the Agreement where the term "SELLER" is used. Elsewhere therein, the term "Dealer" is used to refer to 18W. The Agreement seems to use the terms interchangeably, and it provides in the second paragraph that "Dealer is a seller of Service Contracts." (Agreement at 1.)

3

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Trippe*, 46 F.3d at 627. The parties devote significant portions of their briefs to this issue. 18W maintains that Mepco has already engaged in the conduct as to which it seeks a declaration and that damages are not accruing and thus there is no actual controversy. Mepco argues that there is an actual controversy because its potential liability to 18W from continuing to "withhold funding" could increase and it must determine "on a weekly basis" whether to persist in the course it has chosen, to withhold funding. (ECF No. 31, Pl.'s Mem. Opp'n at 6.)

18W has filed suit for a coercive remedy (damages), and Mepco has already engaged in the conduct that 18W contends was a breach. That conduct occurred in March 2020, well before even Mepco filed suit. There is no dispute that the parties' Agreement was terminated later that month, and, because the set of VSCs that were encompassed by the parties' Agreement is finite, it does not appear that Mepco's potential contractual liability to 18W could increase. Thus, the Court is skeptical that Mepco's claim for declaratory relief presents an actual controversy. But the Court need not reach a definitive determination because, even if Count I presents an "actual controversy" under the Act, the Court still "may properly refuse to grant declaratory relief for prudential reasons." *Coalsales II, LLC v. Gulf Power Co.*, No. 06-CV-488-DRH, 2007 WL 612252, at *5 (S.D. Ill. Feb. 23, 2007) (citing *Trippe*, 46 F.3d at 627). One of those reasons—that a declaratory judgment would serve no useful purpose—is present here. *See Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987).

"[T]he Declaratory Judgment Act is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse.'" *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002) (internal quotation marks and citation omitted); *see also Tempco*, 819 F.2d at 750. Where a declaratory-judgment action and a mirror-image action for coercive relief exist, the Seventh Circuit ordinarily gives priority to the coercive action, regardless of which case was filed first. *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010). Mepco emphasizes that it filed first and 18W did not file until three months later, but the Seventh Circuit does not adhere to a rigid first-to-file rule. *Id.*; *see also Trippe*, 46 F.3d at 629 (affirming dismissal of first-filed declaratory-judgment action in favor of later-filed coercive action). Mepco also contends that 18W is "transparently seeking to avoid the forum selection clause it freely entered into." (Pl.'s Mem. Opp'n at 9.) But Mepco ignores the corresponding portion of the forum selection provision it also freely entered into, as well as the fact that it is not the natural plaintiff. The Seventh Circuit does not look favorably on suits for declaratory judgment that are "aimed solely at wresting the choice of forum from the natural plaintiff." *Hyatt*, 302 F.3d at 718 (internal quotation marks and citation omitted). The Court agrees with 18W that Mepco brought this action in an effort to thwart the operation of the forum-selection and choice-of-law provision for the natural plaintiff. Allowing the instant action to proceed along with 18W's action for coercive relief in New Jersey, in which all of the parties' disputes can be resolved, would lead to an "absurd duplication of effort," *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th Cir. 1993) (discussing parallel lawsuits in an abstention context), and an intolerable imposition on the federal courts. As the Seventh Circuit observed in *Tempco*, "from society's point of view it is essentially irrelevant which [party] bears the expense and inconvenience of litigating in a distant forum—someone must." 819 F.2d at 749.

Accordingly, the Court will exercise its discretion to decline jurisdiction over Mepco's claim for declaratory relief. 18W seeks a with-prejudice dismissal of Count I. But the proper disposition is a dismissal without prejudice. *See Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1217-18 (7th Cir. 1980) (remanding case for dismissal without prejudice where court lacked subject-matter jurisdiction over claim for declaratory relief and noting that even if jurisdiction existed, it was appropriate to decline to exercise discretionary jurisdiction because declaratory relief would serve no useful purpose).

Mepco asserts that its addition of Counts II through V by way of its Second Amended Complaint in November 2020 "transforms" this action into a coercive action.[3] The Court disagrees. In support of its argument, Mepco cites a single decision, *Republic Technologies (NA), LLC v. BBK Tobacco & Foods, LLC*, 240 F. Supp. 3d 848 (N.D. Ill. 2016), in which the court denied a motion to transfer venue of a case with claims for declaratory relief for trade-dress infringement and violations of state law. *Republic Technologies*, however, is distinguishable because it was an intellectual-property case, not a contract case, and it did not involve a contractual forum-selection clause, let alone one like 18W and Mepco's. Nor did the court discuss prudential concerns under the Act. Mepco sought to add Counts II through V only after 18W filed its coercive action in New Jersey; the additional claims are essentially another layer of gamesmanship. Considering the timing of those claims, it is the Court's view that this action is properly characterized for purposes of the instant motion as one for mere declaratory relief. The Court will give priority to the coercive action in New Jersey and enforce the parties' forum-selection clause with respect to Counts II through V and transfer those claims to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013) (a forum-selection clause may be enforced through a motion to transfer under § 1404(a)); *see also Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) ("[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").

In light of this ruling, the Court need not reach 18W's alternative argument that Counts II through V should be dismissed under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

---

[3] Mepco further asserts that Counts II through V "relate back" to the time of its original complaints such that the Court must treat this action as "coercive." But Mepco cites no authority for the proposition that the relation-back doctrine, the purpose of which is to qualify statutes of limitations, *see Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010), has any application to a Court's decision on whether to exercise its discretion to hear a declaratory-judgment action. Nor is the Court persuaded by Mepco's contention that Count I and the additional claims arise out of the same conduct, transaction, or occurrence, as Rule 15 requires for relation back. The new claims are premised on a different set of facts involving AA Auto Holdings, Inc. ("Auto Holdings"), an entity that Mepco characterizes as 18W's predecessor. Mepco alleges that 18W breached the parties' Agreement and engaged in tortious conduct by unlawfully scheming to induce purchasers of VSCs sold by Auto Holdings to cancel their contracts with Auto Holdings and enter into new contracts with 18W, thereby allegedly causing damage to Mepco. Mepco also alleges that 18W fraudulently induced Mepco to enter into the Agreement by making false statements about Auto Holdings' intent to pay its debts to Mepco.

B.   **Attorneys' Fees**

18W requests that the Court enter an order awarding it costs and attorneys' fees "pursuant to the Dealer Agreement between the parties." (ECF No. 28, Def.'s Mot. at 3.) The Agreement contains a provision stating that the "prevailing party" in any litigation in connection with the Agreement shall be entitled to recover from the "non-prevailing party" its costs and reasonable attorneys' fees incurred in connection with such litigation. (Agreement at 7.) 18W does not address this request in its briefs, however, nor does it develop any argument for why it should be considered a prevailing party given the primary relief it seeks. Accordingly, 18W waives the argument. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (perfunctory and undeveloped arguments are waived). Such an award would be improper in any event. A prevailing party is one who prevails on the merits of the action, and the Court's disposition of this action is not on the merits.

## CONCLUSION

Defendant's motion to dismiss and transfer [28] is granted in large part. Count I is dismissed without prejudice. Counts II through V are transferred to the United States District Court for the District of New Jersey in relation to 18W Holdings, Inc. v. Sing for Service, LLC, 2:20-cv-15007-SDW-LDW. Those claims shall be transferred forthwith. Civil case terminated.

**DATE:** February 4, 2021

**Hon. Ronald A. Guzmán**
**United States District Judge**

6